UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LEO PODGORSKI, on behalf of himself
and all others similarly situated,

                        Plaintiff,

          - against -

LIBERTY MUTUAL GROUP INC. and
LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

                     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.

**CLASS ACTION
COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Leo Podgorski ("Plaintiff" or "Mr. Podgorski") brings this class action complaint on behalf of himself and all others similarly situated (the "Class"), upon knowledge as to the facts and upon information and belief as to all other matters, based on the investigation of his counsel, Napoli Shkolnik PLLC, against Defendants Liberty Mutual Group Inc. and Liberty Mutual Fire Insurance Company (collectively, "Liberty Mutual") and states as follows:

## NATURE OF THE ACTION

1.      This is a class action for damages arising from Liberty Mutual issuing renewal flood insurance policies to consumers at a rate that exceeded the proper flood zone rating, resulting in consumers paying excess premium for their flood insurance policies.

2.      Since at least 2013, Liberty Mutual issued renewal flood insurance policies in which the insured properties were improperly designated as being located in a previously higher-risk flood zone than the lower-risk flood zone designated on FEMA's Flood Insurance Rate Map.

3.      In or about September of 2013, FEMA changed certain flood zone designations on the Flood Insurance Rate Map in Lake County, Illinois so that those flood zones were

reclassified as lower-risk zones. Despite these changes by FEMA, Liberty Mutual continued to issue flood policies to homeowners living in these reclassified zones with the previously higher-risk flood zone designations rather than the current lower-risk zone classifications.

4.     As described herein, Liberty Mutual issued successive renewal flood policies to homeowners that each contained the previously higher-risk flood zone – in many cases for at least two years of renewal policies. For policies Liberty Mutual issued with the previously higher-risk flood zone designation, Liberty Mutual received a higher premium from the homeowner.

5.     Homeowners had no idea that for years, they were paying more money in premiums than they should have been paying based on Liberty Mutual issuing renewal flood insurance policies to consumers based on a previously higher-risk flood zone.

## THE PARTIES

6.     Plaintiff Leo Podgorski is a citizen of the State of Illinois.

7.     Upon information and belief, Defendant Liberty Mutual Group Inc. is a corporation organized and existing under the laws of the State of Massachusetts with a principal place of business located at 175 Berkeley Street, Boston Massachusetts, 02116.

8.     Upon information and belief, Defendant Liberty Mutual Fire Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts with a principal place of business located at 175 Berkeley Street, Boston, Massachusetts, 02116.

## JURISDICTION AND VENUE

9.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because Plaintiffs and at least one of the Defendants are citizens of different states and the aggregate amount of controversy exceeds the sum or value of $5,000,000, under Class Action Fairness Act,

exclusive of interest, and is a class action composed of more than 100 members. There is minimal diversity of citizenship between Plaintiffs and Defendants.

10.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1), (2), (c) because Defendants conducted business in this district, the insured properties at issue in this action are located in this district, and substantial actions or omissions occurred in this district.

## FACTS COMMON TO ALL COUNTS

11.     Since at least 2013, Liberty Mutual has been issuing renewal flood insurance policies to consumers (including Plaintiff and the other members of the Class) at a rate that exceeds the proper flood zone rating, resulting in consumers (including Plaintiff and the other members of the Class) paying excess premium for their flood insurance policies.

12.     A Standard Flood Insurance Policy issued under the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001, *et seq.* by write-your-own companies such as Liberty Mutual contains a flood zone designation, which is a rating factor used to determine the per dollar cost of flood insurance coverage.

13.     The flood zone designation is based on a Flood Insurance Rate Map ("FIRM") prepared and maintained by FEMA. A FIRM is the official map of a community on which FEMA has delineated both the special hazard areas and the risk premium zones applicable to the community. Among other designations, a FIRM contains zones designated as "Zone AE" and "Zone X."

14.     Zone AE is considered a higher-risk flood zone, and Zone X is considered a lower-risk flood zone. A flood policy insuring a home situated in an area designated as Zone AE typically results in a higher premium than a flood policy insuring a home situated in an area designated as Zone X.

3

15.    On September 18, 2013, FEMA changed the flood zone designations in the Village of Antioch, Illinois from Zone AE to Zone X.  The effect of such a zone change was to entitle the property owners with flood policies covering homes in the reclassified zones with possible lower premiums.

16.    Liberty Mutual knew or should have known that the flood zone designations changed on the community FIRMs.  Liberty Mutual was in the best position to be aware of flood zones and changes in flood zones on the FIRMs in connection with the flood policies Liberty Mutual issued to insureds.

17.    Nonetheless, Liberty Mutual failed to ensure that the correct flood zone was listed in flood policies it issued to insureds living in communities where the flood zones had changed on the FIRMs.

18.    Liberty Mutual's failure to change the flood zone designation provided Liberty Mutual with a monetary benefit in the form of higher premiums.

19.    Upon information and belief, Liberty Mutual Group Inc. was responsible for determining the correct flood zone designations in the flood policies it issued to Plaintiff and other members of the Class and for collecting the correct premiums under those policies.

20.    Upon information and belief, Liberty Mutual Fire Insurance Company is the particular Liberty Mutual entity that writes and distributes flood policies in Illinois to Liberty Mutual customers, and was responsible for determining the correct flood zone designations in the flood policies it issued to Plaintiff and other members of the Class and for collecting the correct premiums under those policies.

21.    Since 2013, Plaintiff and the other members of the Class were issued flood insurance policies by Liberty Mutual that contained the wrong flood zone designations.  As a

result, Plaintiff and other members of the Class paid Liberty Mutual higher premiums, completely unaware that they were paying more in premiums than they should have.

22.     As a representative example of the experiences of the other members of the Class, Mr. Podgorski purchased Policy Number FF2-248-270416-407 from Liberty Mutual since at least 2009.  Mr. Podgorski's policy was effective for successive one-year periods beginning and ending on July 31.

23.     The flood zone designation on the declaration pages of Mr. Podgorski's policies from July 31, 2009, through July 31, 2016, is Zone AE.

24.     The following table summarizes the premiums paid under Mr. Podgorski's Liberty Mutual policies:

| Date | Zone | Premium Paid |
| --- | --- | --- |
| 7/31/2009 – 7/31/2010 | AE | $916 |
| 7/31/2010-7/31/2011 | AE | $778 |
| 7/31/2011 – 7/31/2012 | AE | $847 |
| 7/31/2012 – 7/31/2013 | AE | $834 |
| 7/31/2013 – 7/31/2014 | AE | $896 |
| 7/31/2014 – 7/31/2015 | AE | $1,265 |
| 7/31/2015 – 7/31/2016 | AE | $1,806 |

25.     Based on the zone changes to the FIRM in or about 2013, Liberty Mutual should have made the corresponding change on all subsequent flood policies it issued in those changed zones.  Nonetheless, Liberty Mutual knowingly, recklessly, and/or negligently failed to state the

correct flood zones on the policies it issued to Plaintiff and the other members of the Class after the changes to the FIRM in or about September 2013.

26. Liberty Mutual was required to list the correct flood zone designation on each policy it issued to Plaintiff and the other members of the Class, which Liberty Mutual failed to do.

27. Plaintiff and the other members of the Class have suffered substantial harm as a direct and proximate result of Liberty Mutual's failure to list the correct flood zone designation on the policies it issued to Plaintiff and the other Class members. That harm is the payment of higher premiums to Liberty Mutual.

28. Liberty Mutual is charged with a duty to be aware of changes to flood zone designations on the FIRM and to state the correct flood zone designations on all policies it issues.

29. Mr. Podgorski only became aware that his insurance policy was reflecting a higher risk flood zone (*i.e.*, Zone AE) when he was informed by his mortgage company in our around December 2015.

30. After learning this, Plaintiff made numerous complaints to Liberty Mutual pertaining to the incorrect higher risk flood zone on his insurance policy.

31. In response to Mr. Podgorski's complaint, Liberty Mutual admitted that their policy contained an improper higher-risk flood zone designation (*i.e.*, Zone AE) and that Mr. Podgorski had been overcharged in premiums due to the improper higher-risk flood zone designation. Inexplicably, despite Liberty Mutual's admission that its policy contained the improper Zone AE designation, Liberty Mutual failed to reimburse Mr. Podgorski for the differential in premiums he paid as a result of being improperly listed in Zone AE.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action on behalf of himself and all other persons similarly situated under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

33.     The Class is defined to include all persons and entities that purchased flood insurance policies for real property located within the State of Illinois from Liberty Mutual prior to September 2013 and whose flood zones in which the properties are located changed thereafter from high-risk flood zones (*i.e.*, Zone AE) to lower-risk flood zones (*i.e.*, Zone X) and who renewed their flood insurance policies thereafter and paid excess premium for their renewal flood insurance policies because their renewal policies had been priced based upon the inaccurate, higher-risk flood zone.  Excluded from the Class are Liberty Mutual; Liberty Mutual's officers, directors, employees, and subsidiaries; any entity in which Liberty Mutual has a controlling interest; any of Liberty Mutual's affiliates, legal representatives, attorneys, heirs, and assigns; government entities or agencies; and any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

34.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23(a) of the Federal Rules of Civil Procedure.

35.     Plaintiff is a member of the Class he seeks to represent.

36.     Plaintiff does not know the exact size of the Class.  Such information is in Liberty Mutual's possession, which is in the exclusive position of being able to determine the identity of its insureds.

37.     There are numerous common questions of law and fact as to Plaintiff and the other members of the Class, which predominate over any questions affecting individual members

of the Class, including, but not limited to, the following:

    a.    Whether Liberty Mutual intentionally, recklessly, and/or negligently failed to change the flood zone designations on flood policies issued to Plaintiff and the other members of the Class following the corresponding changes FEMA made to the flood zones on the FIRMs;

    b.    Whether Liberty Mutual knew or should have known about the 2013 changes to flood zones on FEMA's FIRMs;

    c.    Whether Liberty Mutual had a duty to keep informed about changes to flood zones on FEMA's FIRMs;

    d.    Whether Liberty Mutual engaged in deceptive and unlawful consumer practices in failing to change the flood zone designations on flood policies issued to Plaintiff and the other members of the Class;

    e.    Whether Liberty Mutual committed fraud by knowingly selling flood policies to Plaintiff and the other members of the Class based on misstatements of fact concerning the flood zone designations in such policies; and

    f.    Whether Liberty Mutual is responsible for reimbursing Plaintiff and the other members of the Class for the differential in premiums Liberty Mutual collected on policies containing improper flood zone designations (which commanded higher premiums).

38.    Plaintiff's claims are typical of those of the other members of the Class because Plaintiff and the other Class members were harmed in the same way and suffered the same damages in the form of paying higher premiums for an incorrect flood zone designation.

39.    Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has hired able and experienced counsel to prosecute this action. Plaintiff has no claims antagonistic to those of the Class.

40.    The members of the Class are ascertainable from Liberty Mutual's records maintained in its files and/or databases.

41.    A class action is superior to other available methods for the full and efficient adjudication of the controversy. The Court and the parties would benefit from the economies in

litigating common issues on a class-wide basis instead of a repetitive individual basis.

42.     Plaintiff anticipates no unusual difficulties in the management of the Class.

43.     Plaintiff's and the Class members' damages include, but are not limited to, the following: (a) the differential between the higher premiums paid for a higher-risk flood zone (*i.e.*, Zone AE) policy and the lower premiums that should have been paid for a lower-risk flood zone (*i.e.*, Zone X) policy; and (b) attorney's fees, costs, and disbursements incurred in connection with bringing and prosecuting this action.

44.     As a direct and proximate result of the conduct alleged herein, Liberty Mutual is liable to Plaintiff and the other members of the Class for monetary damages together with Plaintiff's reasonable attorney's fees and costs related to this action.

## COUNT I: NEGLIGENCE

45.     Plaintiff repeats and realleges the foregoing allegations as though fully set forth herein.

46.     Liberty Mutual has a duty to ensure that when it issues flood policies to Plaintiff and the other members of the Class such policies contain the correct flood zone designations as a material term of such policies.  Liberty Mutual also has a duty to keep informed of changes to the FIRM—particularly when such changes impact the flood policies it issues to customers such as Plaintiff and the other members of the Class.

47.     Liberty Mutual breached its duty to Plaintiff and the other members of the Class by issuing flood policies to them with the incorrect Zone AE designation after FEMA had changed the flood zones on the FIRM for the geographic areas in which such policies were issued.  Liberty Mutual repeated its breach of the foregoing duty year after year from 2013.

48.     Liberty Mutual has admitted that such policies contained incorrect Zone AE

designations and should have contained Zone X designations.

49.    Liberty Mutual's breach of duty as alleged herein was the direct, proximate, and foreseeable cause of the damages Plaintiff and the other members of the Class incurred.

50.    Plaintiff and the other members of the Class have suffered damages in an amount to be proven at trial.

51.    Plaintiff and the other members of the Class are entitled to punitive damages because Liberty Mutual's conduct as alleged herein was intentional, willful, and directed at the public at large.

## COUNT II: NEGLIGENT MISREPRESENTATION

52.    Plaintiff repeats and realleges the foregoing allegations as though fully set forth herein.

53.    There is actual and direct privity of contract between Plaintiff and the other members of the Class, on the one hand, and Liberty Mutual, on the other hand, based on Liberty Mutual's issuance of flood policies to Plaintiff and the other members of the Class.

54.    In addition, Liberty Mutual had superior and particularized knowledge of the FIRMs and how to determine the correct flood zone for a particular property because it was an important component of their issuance of flood policies.  By contrast, Plaintiff and the other members of the Class lacked any knowledge that FEMA maintained FIRMs or that they could determine their respective correct flood zones from the FIRMs.

55.    The existence of privity between Plaintiff and the other members of the Class, on the one hand, and Liberty Mutual, on the other hand, imposed a duty on Liberty Mutual to impart correct information to Plaintiff and the other Class members in their flood policies.

56.    As the issuer of flood policies to Plaintiff and the other members of the Class,

Liberty Mutual had a duty to become aware of the correct flood zone for each policy it issued and to list the correct flood zone designations in the flood policies Liberty Mutual issued to Plaintiff and the other Class members.

57.    The inclusion of a flood zone designation in a flood policy is a material statement of fact—a representation that the property of the insured is within that particular flood zone.

58.    The flood zone designations listed in the flood policies Liberty Mutual issued to Plaintiff and the other members of the Class were wrong and were not consistent with the designations contained on the FIRMs.

59.    Liberty Mutual failed to maintain its awareness of the changes FEMA made to the FIRMs for the Village of Antioch in or about 2013, including the communities in which Plaintiff and the other members of the Class live.

60.    The flood zone designation is a material element of a flood policy because it is used to determine the maximum amount of coverage and the amount of the premium due from the insured.

61.    Plaintiff and the other members of the Class reasonably relied on the flood zone designation in the flood policies Plaintiff issued to them and properly believed that the flood zones listed were correct and accurately stated the zone that applied to their respective properties.

62.    Given Liberty Mutual's superior knowledge of flood zone designations—as compared to Plaintiff and the other members of the Class—Plaintiff's and the Class members' reliance on the flood zones Liberty Mutual listed in their flood policies was reasonable and justified.

63.    As a direct and proximate result of Liberty Mutual's conduct as alleged herein,

Plaintiff and the other members of the Class have suffered damages in an amount to be proven at trial.

64.     Plaintiff and the other members of the Class are entitled to punitive damages because Liberty Mutual's conduct as alleged herein was intentional, willful, and directed at the public at large.

### COUNT III: VIOLATION OF THE ILLINOIS CONSUMER
### FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ("ICFA")

65.     Plaintiff repeats and realleges the foregoing allegations as though fully set forth herein.

66.     The ICFA provides remedies to the consumer for unfair or deceptive business acts or practices, including, but not limited to, the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact.

67.     Liberty Mutual's sale of flood policies to Plaintiff and the other members of the Class is consumer-oriented because it involves the sale of a product to individual homeowners.

68.     Liberty Mutual's inclusion of the wrong flood zone designations in the flood policies it sold to Plaintiff and the other members of the Class was misleading in a material way because it caused Plaintiff and the other members of the Class to pay higher premiums than what they should have paid.

69.     Liberty Mutual has admitted that such policies contained incorrect Zone AE designations and should have contained Zone X designations.

70.     Liberty Mutual intended to deceive and induce reliance on the misinformation when Liberty Mutual failed to correct flood zone designations on all policies it issued after being

12

aware of the changes to flood zone designations on the FIRM.

71.     Plaintiff and the other members of the Class relied upon the good faith of Liberty Mutual with regard to the flood zone designations on their policies.

72.     Liberty Mutual's issuance of flood policies with the wrong flood zones to Plaintiff and the other members of the Class was the direct, proximate, and foreseeable result of the damages they have suffered in an amount to be proven at trial.

73.     As a direct and proximate result of Liberty Mutual's violation of the ICFA, Plaintiff and the proposed Class members have been damaged in an amount to be proven at trial.

74.     Plaintiff and the proposed Class members are entitled to relief pursuant to Section 505/10a of the ICFA.

## COUNT IV: UNJUST ENRICHMENT

75.     Plaintiff repeats and realleges the foregoing allegations as though fully set forth herein.

76.     A flood policy insuring a home situated in an area designated in a higher-risk flood zone (*i.e.*, Zone AE) typically results in a higher premium than a flood policy insuring a home designated in a lower-risk flood zone (*i.e.*, Zone X).

77.     Liberty Mutual was unjustly enriched by collecting excess premiums from Plaintiff and the proposed Class members because flood insurance policies were not updated to properly reflect the property's current lower-risk flood zone (*i.e.*, Zone X).

78.     Liberty Mutual should not be permitted to retain the excess premiums it collected from Plaintiff and the proposed Class members because flood insurance policies were not updated to properly reflect the property's current lower-risk flood zone (*i.e.*, Zone X).

79.     Under the circumstances, it would be against equity and good conscience to

permit Liberty Mutual to retain the excess premiums it collected from Plaintiff and the proposed Class members.

80.     Plaintiff and the proposed Class members are entitled to restitution for the excess premium they paid to Liberty Mutual for flood insurance policies not updated to properly reflect the property's current lower-risk flood zone (*i.e.*, Zone X).

## COUNT V: BREACH OF IMPLIED IN FACT CONTRACT

81.     Plaintiff repeats and realleges the foregoing allegations as though fully set forth herein.

82.     Liberty Mutual formed an agreement and entered into a contract with Plaintiff and the proposed Class members including offer, acceptance, and consideration (the "Contract").

83.     Pursuant to the Contract, Plaintiff and the proposed Class members paid money to Liberty Mutual in exchange for Liberty Mutual to provide flood insurance to Plaintiff and the proposed Class members. Liberty Mutual received premiums in exchange for providing flood insurance to Plaintiff and the proposed Class members.

84.     The Contract included, without limitation, Defendants' obligation to charge a premium in accordance with the National Flood Insurance Program Flood Insurance Manual.

85.     Plaintiff and the proposed Class members performed their obligations under the Contract by paying premiums charged by Liberty Mutual.

86.     Liberty Mutual was obligated pursuant to the Contract to, without limitation, charge a premium based on the property's current flood zone.

87.     Defendants breached the Contract by, without limitation, overcharging Plaintiff and the proposed Class members—charging a premium based on a higher-risk flood zone (*i.e.*, Zone AE) rather than a lower-risk flood zone (*i.e.*, Zone X).

14

88.     As a direct and proximate result of Liberty Mutual's breach of contract, Plaintiff and the proposed Class members have suffered damages in an amount to be proven at trial.

## COUNT VI: FRAUD

89.     Plaintiff repeats and realleges the foregoing allegations as though fully set forth herein.

90.     The flood policies Defendants issued to Plaintiff and the other members of the Class following FEMA's flood zone changes to the FIRM contained material misstatements of fact by listing an improper Zone AE designation when such policies should have listed a Zone X designation.

91.     Liberty Mutual specifically made such material misstatements of fact when it listed the incorrect flood zone designations in each flood policy that it issued to Plaintiff and the other members of the Class.

92.     The material misstatements of fact Liberty Mutual made by listing the incorrect flood zone designations were repeated each time Liberty Mutual issued a renewal flood policy to Plaintiff and the other members of the Class after 2013 (when FEMA changed the FIRMs as alleged herein).

93.     The misstatement that the policy was insuring property in Zone AE was material because when compared with a Zone X policy, a Zone AE policy requires an insured to pay a higher premium.

94.     Liberty Mutual acted with scienter.  It knew and intentionally failed to state the correct Zone X designation in the policies it issued to Plaintiff and the other members of the Class so that it could collect increased premiums.

95.     Liberty Mutual was aware of how to determine the correct flood zone

designations by consulting the FIRMs, but failed to do so when issuing flood policies to Plaintiff and the other members of the Class.

96.     Liberty Mutual has admitted that such policies contained incorrect Zone AE designations and should have contained Zone X designations.

97.     Plaintiff and the other members of the Class reasonably and justifiably relied on Liberty Mutual to include the correct flood zone designations in its policies and it was reasonable to assume that Liberty Mutual, as the insurer, would know and include the correct flood zone to include in such policies.

98.     Plaintiff and the other member of the Class relied on Liberty Mutual's designation of Zone AE in their flood policies to their detriment.

99.     Liberty Mutual's intentional and knowing failure to list the correct flood zones in the policies it issued to Plaintiff and the other members of the Class caused them to pay higher premiums.

100.    As a direct and proximate result of Liberty Mutual's conduct as alleged herein, Plaintiff and the other members of the Class have suffered damages in an amount to be proven at trial.

101.    Plaintiff and the other members of the Class are entitled to punitive damages because Liberty Mutual's conduct as alleged herein was intentional, willful, and directed at the public at large.

## **JURY TRIAL DEMAND**

102.    Plaintiff and the other Class members demand a trial by jury on all issues and claims subject to the right of a jury trial.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff and the other members of the Class request the entry of judgment in their favor and against Liberty Mutual:

(i)     Certifying this action as a class action;

(ii)    Appointing Plaintiff as Lead Plaintiff;

(iii)   Appointing Plaintiff's counsel as Class Counsel;

(iv)    On Count I, awarding compensatory damages, consequential damages, and punitive damages in an amount to be determined at trial;

(v)     On Count II, ordering Liberty Mutual to pay restitution to Plaintiff and the proposed Class members in an amount to be determined at trial;

(vi)    On Count III, awarding compensatory damages, consequential damages, and punitive damages in an amount to be determined at trial;

(vii)   On Count IV, awarding compensatory damages, consequential damages, and punitive damages in an amount to be determined at trial;

(viii)  On Count V, awarding compensatory damages, consequential damages, and punitive damages in an amount to be determined at trial;

(ix)    On Count VI, awarding compensatory damages, consequential damages, and punitive damages in an amount to be determined at trial;

(x)     Awarding such equitable, injunctive, monetary, or other relief and further relief as the Court may deem just and proper; and

(xi)    Awarding interest, costs, expenses, and attorneys' fees incurred by Plaintiff and the other members of the Class.

Dated:  Edwardsville, Illinois                    Respectfully submitted,
        May 24, 2016
                                                    NAPOLI SHKOLNIK PLLC

                                                    By:  /s/ Paul J. Napoli
                                                         Paul J. Napoli, Esq.

                                                    Hunter J. Shkolnik (*pro hac vice
                                                    pending*)
                                                    Paul B. Maslo (*pro hac vice pending*)
                                                    Salvatore C. Badala (*pro hac vice
                                                    pending*)
                                                    Napoli Shkolnik PLLC
                                                    Mark Twain Plaza II
                                                    103 West Vandalia Street, Suite 125
                                                    Edwardsville, Illinois 62025
                                                    (212) 397-1000  (Phone)
                                                    (646) 843-7603  (Fax)
                                                    pnapoli@napolilaw.com
                                                    hunter@napolilaw.com
                                                    pmaslo@napolilaw.com
                                                    sbadala@napolilaw.com

                                                    *Attorneys for Plaintiff*